### THALMANN et al. v. GILES et al.

(Supreme Court, Appellate Division, First Department. December 21, 1906.)

1. COUNTERCLAIMS—CHOSE IN ACTION—EQUITABLE ASSIGNMENTS.

    Plaintiffs, who were bankers, made advancements to the B. Company, secured by a pledge of merchandise and the proceeds of the sale thereof; the B. company being accustomed on making sales to deliver a duplicate bill to the purchaser informing it that the bill was payable on plaintiffs' order, and that the check therefor should be mailed direct to them. *Held*, that a sale of merchandise pursuant to such custom evidenced an equitable assignment of a chose in action, and hence the buyer was entitled to counterclaim a cause of action against the B. company as against plaintiffs.

2. SALES—WHAT CONSTITUTES SALE—PARTIES.

    The B. Company sold goods to defendants, directing that the price should be paid to plaintiffs pursuant to an arrangement by which plaintiffs had made advancements to the B. Comapny on security of the proceeds of such sales of merchandise. Plaintiffs wrote defendants with reference to the alleged nondelivery of the goods, and stated that plaintiffs were not parties to the sale, but were simply bankers having made advances to the B. Company against accounts receivable assigned to plain-

tiffs by it. *Held*, that the transaction did not constitute a sale by plaintiffs to defendants, so that defendants' retention of the goods created no implied promise on their part to pay plaintiffs therefor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 26.]

Appeal from Trial Term, New York County.

Action by Ernst Thalmann and others against John H. Giles and others. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

Argued before PATTERSON, INGRAHAM, McLAUGHLIN, LAUGHLIN, and CLARKE, JJ.

Edward P. White, for appellants.

Underwood, Van Vorst & Hoyt (J. Markham Marshall, of counsel), for respondent.

CLARKE, J. The complaint alleges that the plaintiffs are bankers in the city of New York and the defendants cotton manufacturers at Amsterdam, N. Y.; that plaintiffs agreed with the J. Freeman Brown Company, a mercantile and trading corporation, to make loans and advances to it from time to time, to be secured by the hypothecation and pledge, among other things, of merchandise and the proceeds of the sale thereof, and the said company agreed always to keep and maintain a margin of at least 10 per cent. between the value of the merchandise and other securities hypothecated and pledged by it as aforesaid, and the amount of its indebtedness, at any time to the plaintiffs; that it was also a part of the said agreement and the regular course of dealing between the plaintiffs and said Brown Company for the plaintiffs to authorize and permit the said Brown Company to deliver from time to time to purchasers and customers of its own the merchandise hypothecated and pledged to the plaintiffs under the said agreement, but that the plaintiffs consented to such delivery and the relinquishment of their right to the possession of the said merchandise upon the sole condition that every purchaser from the said Brown Company receiving merchandise previously hypothecated and pledged to the plaintiffs should be given notice at or about the time of the receipt thereof that the plaintiffs had an interest therein or lien thereon, and that the money due therefor was payable only to the plaintiffs; that under and in pursuance of the said agreement large loans and advances were made by the plaintiffs to the said Brown Company prior to its bankruptcy on December 7, 1903; that at the time of the filing of the petition in bankruptcy the Brown Company was indebted to the plaintiffs in an amount largely in excess of the merchandise and other securities held by them as security for said indebtedness, and that there was included in the merchandise hypothecated and pledged to the plaintiffs all the cotton yarn the subject of this suit; that the cotton yarn and each shipment thereof was delivered to the defendants and accepted and retained by them with full notice that the bills therefor were payable to the plaintiffs herein; "that by reason of the premises the defendants have promised and agreed to pay to the plaintiffs the balance remaining unpaid on said cotton yarn." The answer was substantially a general denial, and, by way of offset, a counterclaim con-

sisting of an accrued demand for damages for nondelivery against said Brown Company existing prior to the acquirement of any rights by the plaintiffs.

The facts which were established were that the plaintiffs were bankers in New York City, and the defendants were manufacturers of cotton fabrics at Amsterdam, N. Y. The James Freeman Brown Company was a corporation located in New York City, doing business as selling agents for mills manufacturing cotton yarns. The defendants bought yarns from the Brown Company at various times from June 15 to November 4, 1903, amounting to about $12,000, of which about $4,-000 remained unpaid in January, 1904. The Brown Company, after each of such purchases had been made and the yarn shipped, prepared a bill thereof and mailed it to the defendants. Each of those bills was headed:

"Detailed invoice of merchandise. Bought of James Freeman Brown Company, Mill Selling Agents Cotton Fabrics and Yarns."

And contained a red ink stamp:

"This bill is payable to order of Ladenburg, Thalmann & Co., 27 Broad Street, New York. Make check payable to order of Ladenburg, Thalmann & Co., and mail direct."

These bills or invoices also set forth the terms to be cash, less 2 per cent. on the 10th of the following month, or net in 60 days from said date. The goods were "shipped to Amsterdam, N. Y.," and the "goods at buyer's risk when shipped." The Brown Company also made out in duplicate corresponding bills on the bill heads of the plaintiffs and sent them to the plaintiffs, who kept and filed the duplicates and mailed the original bills to the defndants. These bills were headed:

"To Ladenburg, Thalmann & Company, Dr., 25 Broad Street. For merchandise delivered by James Freeman Brown Co., Mill Selling Agents Cotton Fabrics and Yarns."

And also contained the same terms and statements as to the goods being shipped at purchaser's risk to Amsterdam, N. Y., and the notice to make all remittances to the plaintiffs. Many of the goods were shipped from the south; others from New York. They arrived in Amsterdam usually from two to eight weeks after shipment. The goods in suit were received by the defendants and were accepted and used by them. The defendants have not paid the plaintiffs or the Brown Company or anybody therefor.

There is no evidence of the matters following, although set up in the complaint: The terms of the agreement between the Brown Company and plaintiffs, nor that defendants knew of the terms of that agreement. That plaintiffs had made loans and advances to said company. That the 10 per cent. margin had ever existed or was exhausted. That there was any indebtedness of the Brown Company to the plaintiffs, nor the amount thereof. The plaintiffs now say these allegations of the complaint were mere surplusage. The defendants were not permitted to prove their counterclaim against the Brown Company as an offset. It did appear that the trustee in bankruptcy of the Brown Company had a controversy with the plaintiffs, and that he had

made inquiries of the defendants as to the relations that existed between defendants and plaintiffs in this transaction.

A verdict for the plaintiffs was directed by the court upon the ground that the receipt and retention by the defendants of the goods shipped to them by the James Freeman Brown Company, with the knowledge that the bills therefor were payable to Ladenburg, Thalmann & Co., created an implied promise upon their part to pay the value of the goods to the plaintiffs.

The plaintiffs, upon the trial, relied upon Thalmann et al. v. Capron Knitting Co., 100 App. Div. 247, 91 N. Y. Supp. 520, affirmed 182 N. Y. 525, 74 N. E. 1126. In that case, on a demurrer to the complaint, this court held that the complaint—which was substantially similar to the one at bar, with a significant exception that it contained the allegation "that the aforesaid cotton yarn and cloth was delivered to the defendants and accepted and retained by them with notice that the plaintiffs had a lien thereon or interest therein, and that the amount due therefor was payable only to the plaintiffs"—stated a cause of action. "It shows that the plaintiffs abandoned their lien by allowing the goods to be delivered to the defendant, who accepted them with notice and knowledge that the plaintiffs were entitled to be paid therefor. The basis of the claim is an implied promise of the defendant to pay." But upon demurrer all the facts alleged are admitted to be true. An agreement was alleged, a course of business dealing was set forth, the advancement of moneys upon the security of merchandise, the preservation of a margin, an existing indebtedness, a pledge of the specific goods, a lien thereon and acceptance by the defendant of the goods, with knowledge of the lien. Those facts being admitted, this court held that a cause of action was stated. No one of those facts is here proved, and a lien is not even alleged. There was a failure of proof, an abandonment of the complaint, and an entirely different question presented from that in the Capron Knitting Co. Case, supra.

Upon the proof here it seems to me there is, at best, a mere equitable assignment of a chose in action. Under such circumstances the defendants had a right to prove their counterclaim as against the Brown Company. It was also incumbent upon the plaintiffs to prove the amount of the existing indebtedness to them from the Brown Company, because, having alleged collateral security, they had first to prove an existing indebtedness before they could collect upon the collateral security. The plaintiffs, abandoning the theory of their complaint, seem to reply, though nowhere alleging it, upon a direct transaction between themselves and the defendants—a sale to the defendants by plaintiffs of the goods. There is one letter in the case which would seem to destroy this theory. Exhibit M, from plaintiffs to the defendants, expressly says:

"We note what you say in respect to the non-delivery of goods and would briefly state our position in the matter. We were not and are not parties to the sale of the merchandise, but have been simply bankers, having made advances to the James Freeman Brown & Company against accounts receivable assigned to us by them."

But they nowhere prove this. The learned trial judge, however, seems to have adopted this new theory, for he said:

"The goods were shipped directly by the plaintiffs, or they find their way—the goods of the plaintiffs, put it that way, no matter how you may have obtained title to them, the goods of the plaintiffs find their way—into the possession of the defendants, and they accepted them and retained possession of them. They received bills for them, made out to them in the name of the plaintiffs. Taking all these circumstances into consideration, the law, in my opinion, assumes that there was a promise on the part of the defendants to pay for the goods."

But the complaint does not allege that they were the goods of the plaintiffs, and the above letter destroys any such claim.

The direction of a verdict for plaintiffs was error, and the judgment entered thereon must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.